The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of O.C., a Child,

and

Concerning C.M. and C.M., Intervenors–Appellants.

No. 12CA0649.

Colorado Court of Appeals, Division VII.

Sept. 27, 2012.

Ellen G. Wakeman, County Attorney, Jennifer A. Mullenbach, Assistant County Attorney, Golden, Colorado, for Petitioner–Appellee.

Catherine A. Madsen, Guardian Ad Litem.

The Bourassa Law Group, LLC, Hillary R. Ross, Denver, Colorado; Terry Ross, Denver, Colorado, for Intervenors–Appellants.

Opinion by Judge TERRY.

¶ 1 In this dependency and neglect proceeding concerning O.C. (the child), Ch.M., the child's maternal grandfather (grandfather), and Ca.M., the child's maternal stepgrandmother (grandmother), appeal from the order denying their motion to intervene. They contend that as grandparents, they have the right to intervene under section 19–3–507(5)(a), C.R.S.2012, and that the district court erred in denying them that right. We agree, and therefore reverse and remand.

## I. Background

¶ 2 O.C. was removed from the care of Je.C. (mother) and Ju.C. (father) in May 2010, approximately seven weeks after her birth, because of concerns that mother, who had been diagnosed with bipolar disorder, was not adequately caring for O.C. An older child, two-year-old B.C., had been removed from mother's care five months earlier because of concerns about possible physical abuse.

¶ 3 The Jefferson County Division of Children, Youth, and Families (the County) initially allowed O.C. to remain in the care of a family friend while mother worked on her treatment plan. O.C. was moved to a foster

home after concerns were raised about the friend's use of marijuana while caring for her.

¶ 4 Grandfather and grandmother first sought to become involved in the proceeding in October 2010, when they moved to intervene under C.R.C.P. 24(a) and (b) and requested that both children be placed with them. The County opposed the motion, arguing that the grandparents did not meet the criteria to intervene as a matter of right under section 19–3–507(5)(a), and the trial court denied the motion.

¶ 5 In July 2011, the County moved to place O.C. with grandfather, but withdrew the motion soon thereafter, alleging that grandfather had been "unable to make a commitment to caring for [O.C.]." Grandfather responded with a request to be made a special respondent, asserting that he wanted to be a party to the case and to have both children placed with him. The court construed grandfather's motion as a motion to intervene, found that grandfather did not satisfy the requirements of section 19–3–507(5)(a) and therefore was not entitled to intervene as a matter of right, and denied the motion.

¶ 6 In January 2012, the County moved to terminate both parents' parental rights with respect to O.C. The grandparents again sought to intervene. The court denied their motion, and they now appeal that denial.

## II. Jurisdiction

¶ 7 Both the County and the Guardian Ad Litem (GAL) contend that the order denying the grandparents' motion to intervene is not a final order and, thus, is not properly before this court on appeal. We disagree.

¶ 8 Generally, for the purpose of appeal, a final order or judgment "is one that ends the particular action, leaving nothing further to be done to determine the rights of the involved parties completely." *People in Interest of H.R.*, 883 P.2d 619, 620 (Colo.App. 1994). In a dependency and neglect proceeding, post-dispositional orders that do not terminate a parent's custodial rights are generally held not to be final and appealable. *Id.*

(citing *E.O. v. People*, 854 P.2d 797, 801 (Colo.1993) (post-dispositional order approving amended treatment plan); *People in Interest of P.L.B.*, 743 P.2d 980, 982 (Colo.App. 1987) (order modifying out-of-home placement); and *People in Interest of K.L.*, 681 P.2d 535, 536 (Colo.App.1984) (order continuing out-of-home placement)).

¶ 9 The order denying the grandparents' motion to intervene did not end the dependency and neglect action, nor did it terminate either parent's custodial rights. However, our inquiry into the finality of the order does not end here, because the Colorado Supreme Court has held that "[t]he denial of a motion to intervene as a matter of right is a final and appealable order." *Feigin v. Alexa Group, Ltd.*, 19 P.3d 23, 26 (Colo.2001).

¶ 10 In *Feigin*, nonparties sought to intervene in a civil case under C.R.C.P. 24(a), which provides that upon timely application anyone may intervene

(1) [w]hen a statute confers an unconditional right to intervene;

or

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless [his] interest is adequately represented by existing parties.

The County and the GAL argue that the holding of *Feigin* does not apply in this case because C.R.C.P. 24 does not apply in a dependency and neglect proceeding, or, alternatively, because the grandparents do not meet the "substantive requirements for intervention" under C.R.C.P. 24(a). We reject both arguments.

¶ 11 At oral argument, the County cited *People in Interest of M.D.C.M.*, 34 Colo.App. 91, 522 P.2d 1234 (1974), for the proposition that C.R.C.P. 24(a) does not authorize intervention in a dependency and neglect proceeding. However, the *M.D.C.M.* division held that foster parents who had custody of a child for "a substantial number of months" were entitled to become parties at the dispositional stage of the proceeding, and thus,

were properly permitted to intervene under C.R.C.P. 24. 34 Colo.App. at 95, 522 P.2d at 1237. In reaching this conclusion, the *M.D.C.M.* division noted that the Children's Code "expressly contemplates the active participation of 'interested parties' at the dispositional hearing." *Id.* at 94, 522 P.2d at 1236. The division concluded that

> the Code, read as a whole, anticipates that those having custodial experience with the child have sufficient interest, knowledge, and concern relative to the child to bring them within the classification of 'interested parties' and thus they are entitled, upon application, to intervene as a matter of right in the dispositional hearing.

*Id.* at 94–95, 522 P.2d at 1237.

¶ 12 In *People in Interest of C.P.*, 34 Colo. App. 54, 58–59, 524 P.2d 316, 319–20 (1974), another division of this court held that a grandmother was an "interested party" who was entitled to intervene as a matter of right at the dispositional stage in a dependency and neglect proceeding. The *C.P.* division cited provisions of the Children's Code authorizing the trial court to give custody of a dependent and neglected child to a relative as a basis for its conclusion.

¶ 13 As *M.C.D.M.* and *C.P.* show, Colorado courts have long recognized the right of "interested parties" to intervene in a dependency and neglect proceeding under C.R.C.P. 24(a).

■ ¶ 14 The GAL argues, nevertheless, that the denial of the grandparents' motion to intervene is not a final order because they do not meet the "substantive requirements" for intervention under either C.R.C.P. 24(a)(1) or (2). That argument begs the very question posed in this appeal: whether the grandparents have the right to intervene. We conclude that under *Feigin*, an order denying intervention to a party seeking to intervene as a matter of right must be treated as a final, appealable order. Otherwise, persons who may have substantial rights to intervene would be prejudicially denied the right to be heard at critical stages of the litigation, when potentially irrevocable decisions affecting their rights may be made, and could only be heard on appeal after the litigation was completely ended. Such prejudice

would be especially acute in a dependency and neglect case involving a young child, such as O.C. is here.

¶ 15 Section 19–3–507(5)(a) provides that grandparents may intervene at any time after adjudication, and thus would necessarily allow intervention *before* parental rights are terminated. We conclude that, as in *Feigin*, we must consider the trial court's denial of the grandparents' motion to intervene as of right to be a final, appealable order.

¶ 16 Having concluded that the order denying the motion to intervene is final and appealable, we need not address the GAL's further argument regarding C.R.C.P. 24(a)(2).

### III. The Right of Grandparents to Intervene

¶ 17 Grandfather and grandmother contend the trial court erred in denying their motion to intervene as a matter of right under section 19–3–507(5)(a). We agree.

#### A. Principles of Statutory Construction

■ ¶ 18 Statutory construction is a question of law, subject to de novo review. *People v. Perez*, 238 P.3d 665, 669 (Colo.2010).

¶ 19 In interpreting a statute, we strive to give effect to the legislative intent. *C.S. v. People*, 83 P.3d 627, 634 (Colo.2004). To do so, we look first to the language of the statute and give words their plain and ordinary meaning. *Id.* at 635.

■ ¶ 20 A statute is ambiguous only if it is fairly susceptible of more than one interpretation. *Miller v. Indus. Claim Appeals Office*, 985 P.2d 94, 96 (Colo.App.1999). " 'The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' " *People v. Nance*, 221 P.3d 428, 430 (Colo.App.2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).

■ ¶ 21 A statute susceptible of more than one interpretation must be construed in

light of its legislative intent and purpose. *People in Interest of M.W.*, 796 P.2d 66, 68 (Colo.App.1990). To determine legislative intent, we may consider the textual context, the statute's legislative history, the state of the law prior to the legislative enactment, the problem addressed by the legislation, and the relationship between the particular legislation and other relevant legislative provisions. *Farmers Ins. Exch. v. Bill Boom Inc.*, 961 P.2d 465, 470 (Colo.1998).

¶ 22 When construing a statute, we must adopt the construction that best effectuates the purpose of the statutory scheme. *Catholic Charities & Cmty. Servs. in Interest of C.C.G.*, 942 P.2d 1380, 1383 (Colo.App. 1997). We must presume that the legislature intended a just and reasonable result and avoid a statutory interpretation that would lead to an absurd result. *People in Interest of H.*, 74 P.3d 494, 495 (Colo.App.2003).

B. Application to Section 19–3–507(5)(a)

¶ 23 Section 19–3–507(5)(a) provides: Parents, *grandparents*, relatives, *or foster parents who have the child in their care for more than three months* who have information or knowledge concerning the care and protection of the child may intervene as a matter of right following adjudication with or without counsel.

(Emphasis added.)

¶ 24 The grandparents argue that the statute is ambiguous because it is susceptible of two different interpretations. One interpretation—which was argued by the County and GAL and adopted by the trial court—is that all potential intervenors, including parents, grandparents, and relatives, must have the subject child in their care for more than three months to be eligible to intervene. Because the grandparents had not had O.C. in their care for more than three months, the court denied their motion to intervene. They now contend this interpretation is incorrect.

¶ 25 The correct interpretation, according to the grandparents, is that the three-month requirement applies *only to foster parents*. We conclude that section 19–3–507(5)(a) is reasonably susceptible of either interpretation, and thus is ambiguous.

¶ 26 To resolve the ambiguity, we turn to the rules of statutory construction. As an initial matter, we note that the "last antecedent rule," a rule of statutory construction which provides that in the absence of a contrary intention, referential and qualifying words or phrases refer solely to the immediately preceding clause, has not been adopted by the General Assembly and does not create any presumption of statutory intent. § 2–4–214, C.R.S.2012. Thus, we may not draw any conclusions based on the fact that the phrase "foster parents" immediately precedes the clause "who have the child in their care for more than three months."

¶ 27 The General Assembly is presumed to be aware of existing law when it enacts legislation. *Vigil v. Franklin*, 103 P.3d 322, 330 (Colo.2004).

¶ 28 Section 19–3–507(5)(a) was enacted in 1997. Ch. 254, sec. 14, § 19–3–507(5), 1997 Colo. Sess. Laws 1439. Prior to enactment of subsection (5)(a), a division of this court held that a grandmother had standing as an "interested party" to challenge the trial court's order granting temporary custody of her dependent and neglected grandchildren to the county welfare department. The division concluded that because the Children's Code contemplated the placement of a dependent and neglected child in the legal custody of a relative, such persons "must be permitted to participate in the dispositional proceedings" if they have made a timely application for custody before the dispositional hearing. *C.P.*, 34 Colo.App. at 58, 524 P.2d at 319. Placement of dependent and neglected children in the legal custody of relatives continues to be one of the dispositional options available to the court under section 19–3–508(1)(b), C.R.S.2012. We conclude that this legal history weighs in favor of construing the statute to permit relatives to intervene as a matter of right at any time after adjudication, without regard to whether the child has previously been in their care.

¶ 29 In another case decided before the adoption of section 19–3–507(5)(a), foster parents who had had a dependent and neglected child in their care for "a substantial number of months" were held to have the right to

intervene at the dispositional stage. *See M.D.C.M.*, 34 Colo.App. at 94, 522 P.2d at 1236 (interested parties include "individuals who, because of their relationship with or particular knowledge concerning the child, can materially aid the court in its determination of what in fact is in the child's best interest"). As the M.D.C.M. division recognized, allowing the intervention of persons with knowledge of the child can assist the court in making decisions about the child. *Cf. People in Interest of A.M.*, (Colo.App. 2010) (*cert. granted* 2011 WL 3276665 (Colo. Aug. 1, 2011)) (addressing ability of foster parents to intervene and participate in dependency and neglect proceeding under § 19–3–507(5)(a)).

¶ 30 With this historical background in mind, we construe section 19–3–507(5)(a) to require foster parents—but not parents, grandparents, or other relatives—to have had the subject child in their care for at least three months before being permitted to intervene. Unlike the other categories of persons listed in that subsection, foster parents are likely to have useful information only if they have had the child in their care long enough to become familiar with his or her needs. Parents, grandparents, and other family members may be able to offer information useful to the court even if they have never had the child in their custody.

¶ 31 Our construction is supported by the legislative declaration contained in the Children's Code. One of the express purposes of the Code is "[t]o preserve and strengthen family ties whenever possible." *See* § 19–1–102(1)(b), C.R.S.2012. Allowing parents, grandparents, and other interested family members to intervene is consistent with this goal; limiting the right to intervene to those relatives who have had the child in their custody for a minimum of three months is not. Thus, we conclude that our construction is consistent with the General Assembly's intent in enacting the Code.

¶ 32 Indeed, as the grandparents argue, the trial court's construction of section 19–3–507(5)(a) would require not just a subject child's grandparents and other relatives, but also a parent of the child who has not been named in the petition, to meet the three-month custody test before being allowed to intervene. Such a construction would lead to an absurd result if the application of the test prevented a potentially fit parent who had not been named as a respondent from intervening in a dependency and neglect proceeding solely because the parent had not had the child in his or her custody for the requisite amount of time. *See Troxel v. Granville*, 530 U.S. 57, 71, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (parent has a fundamental constitutional right to make decisions concerning the care, custody, and control of his or her child).

¶ 33 Accordingly, we conclude that section 19–3–507(5)(a) affords to grandparents of a dependent and neglected child the right to intervene in a dependency and neglect proceeding at any time after adjudication, and that such right is not contingent upon a showing that those grandparents have had the child in their care for more than three months.

¶ 34 The order is reversed, and the case is remanded to the trial court to allow grandfather and grandmother to intervene in the proceeding.

Judge BOORAS and Judge FOX concur.