2013 COA 109

**TOWN OF CASTLE ROCK and CIRSA, Petitioners,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Mike Zukowski, Respondents.**

**Court of Appeals No. 12CA2190**

Colorado Court of Appeals,
Div. V.

Announced July 3, 2013

Ritsema & Lyon, P.C., Paul Krueger, Alana S. McKenna, Denver, Colorado, for Petitioners

No Appearance for Respondent Industrial Claims Appeals Office.

Law Office of O'Toole and Sbarbaro, P.C., Neil D. O'Toole, Denver, Colorado, for Respondent Mike Zukowski.

Opinion by JUDGE GRAHAM

¶ 1 This workers' compensation action raises a question of statutory interpretation: What evidence overcomes the statutory presumption of compensability articulated in section 8–41–209, C.R.S.2012? The statute provides that certain cancers contracted by firefighters with five or more years on the job shall be compensable under the Workers' Compensation Act (Act), sections 8–40–101 to –47–209, C.R.S.2012. However, an employer may overcome the presumption "by a preponderance of the medical evidence that [the cancer] did not occur on the job." § 8–41–209(2)(b), C.R.S.2012. The Industrial Claim Appeals Office (Panel) affirmed the ruling of the administrative law judge (ALJ) that a specific non-work-related cause of the cancer had to be established in order to overcome the presumption. We conclude, to the contrary, that the presumption can be overcome by establishing that the risk of cancer from other sources outweighs the risk created by firefighting. We therefore set aside the Panel's decision and remand this matter for consideration under the statute as interpreted here.

## I. Background

¶ 2 The facts of this case are undisputed. Claimant, Mike Zukowski, has worked as a firefighter, engineer, and paramedic for employer, the Town of Castle Rock (the Town), since November 2000. He grew up in Albuquerque, New Mexico, where he was involved in cub scouts, boy scouts, soccer, gymnastics, track and field, and orchestra. He served as a firefighter in that city before moving to Colorado. During his off hours, claimant also worked in construction, framing, and building decks, and sometimes working outside.

¶ 3 In 2011, claimant was diagnosed with malignant melanoma on his right outer calf. Claimant underwent three excision surgeries to remove the growth. He was subsequently released to work full duty and appears to be cancer free.

¶ 4 Claimant sought both medical benefits and temporary total disability (TTD) benefits under section 8–41–209. Under the statute,

(1) Death, disability, or impairment of health of a firefighter of any political subdivision who has completed five or more years of employment as a firefighter, caused by cancer of the brain, skin, digestive system, hematological system, or genitourinary system and resulting from his or her employment as a firefighter, shall be considered an occupational disease.

(2) Any condition or impairment of health described in subsection (1) of this section:

(a) Shall be presumed to result from a firefighter's employment if, at the time of becoming a firefighter or thereafter, the firefighter underwent a physical examination that failed to reveal substantial evidence of such condition or impairment of health that preexisted his or her employment as a firefighter....

§ 8–41–209(1), (2)(a), C.R.S.2012. The parties stipulated that section 8–41–209's presumption of compensability applied. The only issue presented at hearing, then, was whether the Town had overcome the presumption.

¶ 5 The Town retained a physician with expertise in occupational and environmental medicine, Dr. William Milliken, M.D., who reviewed claimant's medical records and his history of risk exposures. Dr. Milliken opined that although firefighters have an increased risk of developing melanoma as compared to the general population, claimant's various other exposures and risk factors—primarily sun exposure and the presence of moles on his skin—placed him at far greater risk of developing melanoma.

¶ 6 The ALJ ruled, however, that Dr. Milliken's testimony was insufficient to overcome the presumption of compensability. The legislature specified that an employer may overcome the presumption by showing "by a preponderance of the medical evidence that such condition or impairment did not occur on the job." § 8–41–209(2)(b). The ALJ interpreted this statutory provision to mean that an employer must show that "a claimant's cancer comes from a specific cause not occurring on the job." Consequently, the ALJ concluded that the Town's introduction of "risk factors outside of firefighting exposure is insufficient to sustain [employer's] burden of proof."

¶ 7 On review, the Panel affirmed the ALJ's decision. The Panel reasoned that whether the Town had shown "that firefighting is not a causative factor in ... claimant's skin cancer is one of fact for determination by the ALJ." Because the Panel concluded that sufficient evidence supported the ALJ's determination, it declined to set aside the ALJ's order. This appeal followed.

## II. Analysis

■ ¶ 8 The Town, along with its insurer, CIRSA (collectively, Town), contends that the ALJ misinterpreted section 8–41–209(2)(b) when he determined that the evidence it offered was insufficient to overcome the presumption of compensability created by section 8–41–209(1). It argues that, contrary to the ALJ's interpretation, section 8–41–209(2)(b) "does not require an employer to prove the exact cause of [a] claimant's cancer" in order to overcome the statutory presumption of compensability. Moreover, it contends, in cases such as this, in which the precise cause of a claimant's cancer cannot be determined, mandating that an employer can only overcome the burden by establishing that the "specific cause" did not occur on the job effectively raises an employer's burden "to a heightened burden of proof that is ... akin to a strict liability standard." The Town asserts that the ALJ should have considered the evidence of risk factors it introduced. It maintains that by finding its evidence insufficient, the ALJ failed to carry out the legislature's intent to leave open an avenue to overcome the statutory presumption. We agree.

### A. Rules of Statutory Interpretation

■ ¶ 9 As with all statutory construction, when we interpret a provision of the Act, if its language is clear "we interpret the statute according to its plain and ordinary meaning." *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo.2004). In addition, "when examining a statute's plain language, we give effect to every word and render none superfluous, because '[w]e do not presume that the legislature used lan-

guage "idly and with no intent that meaning should be given to its language." '." *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo.2005) (citation omitted) (quoting *Carlson v. Ferris*, 85 P.3d 504, 509 (Colo. 2003)).

¶ 10 While we are not bound by the Panel's interpretation or its earlier decisions, *Olivas–Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo.App.2006), and review statutory construction de novo, *Ray v. Indus. Claim Appeals Office*, 124 P.3d 891, 893 (Colo.App.2005), *aff'd*, 145 P.3d 661 (Colo.2006), we give deference to the Panel's reasonable interpretations of the statute it administers. *Sanco Indus. v. Stefanski*, 147 P.3d 5, 8 (Colo.2006); *Dillard v. Indus. Claim Appeals Office*, 121 P.3d 301, 304 (Colo.App.2005), *aff'd*, 134 P.3d 407 (Colo. 2006).

¶ 11 In general, "an administrative agency's interpretation of its own regulations is ... entitled to great weight and should not be disturbed on review unless plainly erroneous or inconsistent with such regulations." *Jiminez v. Indus. Claim Appeals Office*, 51 P.3d 1090, 1093 (Colo.App.2002). The Panel's interpretation will, however, be set aside "if it is inconsistent with the clear language of the statute or with the legislative intent." *Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175 (Colo.App.1998).

### B. Section 8–41–209's Rebuttable Presumption

¶ 12 As we have discussed, section 8–41–209 creates a rebuttable presumption of compensability for certain cancers contracted by firefighters who have "completed five or more years of employment as a firefighter," but had no "substantial evidence of such condition or impairment of health that preexisted his or her employment as a firefighter." The express statutory language provides that an otherwise compensable cancer "[s]hall not be deemed to result from the firefighter's employment if the firefighter's employer or insurer shows by a preponderance of the medical evidence that such condition or impairment did not occur on the job." § 8–41–209(2)(b).

¶ 13 One division of this court has already examined the burden placed on employers to overcome the presumption. In *City of Littleton v. Industrial Claim Appeals Office*, 2012 COA 187, —— P.3d ——, 2012 WL 5360912, a division of this court held that the statute required employers to "affirmatively prove, by a preponderance of the evidence, that the firefighter's cancer did not result from, arise out of, or arise in the course of the firefighter's employment." *Id.* at ¶ 34. Thus, under the majority's view in *City of Littleton*, an employer could overcome the presumption by showing "that [the] claimant's occupational exposures (1) could not have caused [the type of cancer the firefighter contracted] (disproving general causation), or (2) did not cause claimant's particular [cancer] (disproving specific causation)." *Id.* at ¶ 82.

¶ 14 In *City of Littleton*, a firefighter was diagnosed with brain cancer. The City of Littleton introduced evidence showing that while some chemicals had been "weakly associated" with brain cancer, few had "been identified as an exposure in firefighters." *Id.* at ¶ 62. The City also challenged the causal link between firefighting and brain cancer. *Id.* at ¶ 67. The majority held that because the City "produced no evidence about [the firefighter's] specific occupational exposures," it had failed to overcome the statutory presumption of compensability. *Id.* at ¶¶ 93–94.

### C. The Town's Evidence Offered to Rebut the Presumption

¶ 15 Here, in contrast, the Town introduced evidence of claimant's specific exposures and risks for developing melanoma. Dr. Milliken, the Town's retained medical expert, testified that claimant's increased risk for developing melanoma as a result of firefighting was about "1.32" which translates to "around a [thirty] percent increase, or [twenty-eight] percent, [but he did not] remember the exact math." Conversely, claimant's increased risk of melanoma due to ultraviolet (UV) exposure, based upon his admitted sun exposure, "was at least twice normal." In addition, Dr. Milliken testified that moles on claimant's skin, four or five of which he thought could be "atypical nevi,"

also greatly increased claimant's risk of melanoma. According to Dr. Milliken, these atypical nevi suggested an increased risk of melanoma in claimant "6–10 times normal." Dr. Milliken summarized his findings as follows:

In summation, in this case, in all medical probability, it appears that melanoma arose from a precursor mole on the right calf, and that the non-occupational risk factors of sun exposure and nevus count were in all probability related to an increased risk for melanoma at up to 6–10 or more times normal.

[I]f one assumes that skin contact with [polyaromatic hydrocarbons] secondary to firefighting exposure did occur on a frequent basis, the likelihood that sun exposure and skin type [were] the cause of melanoma is about 600–1000% as compared to a "normal" person, whereas the possibility secondary to firefighting is perhaps 24% (the meta risk of 1.32 suggests that if 132 cases of melanoma were to have occurred in firefighters, 32 of them would be attributed to firefighting exposure; 32/132 = 24%).

¶ 16 Dr. Milliken's opinions were echoed by claimant's retained expert in occupational and environmental medicine, Dr. Annyce Mayer, M.D. Although she opined that it could not be proven that claimant's melanoma "did not occur on the job," emphasized the distinction between risk and causation, and maintained that "relative risk does not establish causation," she agreed with Dr. Milliken on several points. In particular, she acknowledged that

(1) ninety percent of DNA changes are caused by UV radiation;

(2) claimant's childhood sun exposure was a risk factor for developing melanoma;

(3) claimant's atypical nevi were also a risk factor for developing melanoma;

(4) three atypical nevi correlated with a "relative risk of 3.03" while five atypical nevi raise an individual's risk to "6.36";

(5) firefighters have a "summary risk estimate of 1.32" for developing melanoma; and

(6) there was "no way to know" what claimant's "causative exposure" was.

Dr. Mayer's testimony thus reflected and supported the view that firefighting was a lesser melanoma risk to claimant than his other known exposures and risks. Indeed, the risk statistics she provided corroborated Dr. Milliken's statistics showing that firefighting was the least of claimant's risk exposures for melanoma.

D. Interpretation of Section 8–41–209(2)(b)

¶ 17 In affirming the ALJ, the Panel held that it could not set aside the ALJ's decision because the ALJ "plausibly interpreted" the medical evidence of the experts and did not misapply the law. It noted that while the ALJ found Dr. Milliken "unpersuasive," it was persuaded by Dr. Mayer that statistical risk factors were not necessarily demonstrative that the cancer "did not occur on the job."

¶ 18 While we disagree with the Panel on this point—the ALJ never found Dr. Milliken "unpersuasive" or less than credible, but actually noted that both physicians were "well qualified" and "agree[d] on several key points"—we note that the ALJ's credibility determinations need not be given deference if the ALJ misapplied the statute. The question here is not which expert was more credible and persuasive, but whether the type of information provided, namely, risk factors rather than definitive causal links, was sufficient to overcome the presumption of compensability. We conclude that evidence of risk factors can be sufficient and that the Panel and the ALJ consequently misinterpreted section 8–41–209(2)(b).

¶ 19 As the majority observed in *City of Littleton*, because "employers may be unable to locate the kind of evidence that would disprove specific causation," "evidence [of alternative causation] may be sufficient to disprove specific causation." *City of Littleton*, ¶ 38. Contrary to the Panel's interpretation of the statute, *City of Littleton* did not require an employer to unequivocally establish that the cause of the firefighter's cancer arose outside work. Rather, "evidence of alternative causation" may satisfy an employer's burden of establishing by a preponderance of the evidence that the cancer "did not occur on the job." *Id.*; *see* § 8–41–209(2)(b).

Following this reasoning, we conclude that an employer can overcome the presumption of compensability created by section 8–41–209(2)(b) with evidence that a claimant's injury more likely than not arose from a source outside the workplace.

¶ 20 Requiring an employer to establish that a cancer was specifically caused by a source outside the workplace, as the ALJ did here, creates a nearly insurmountable barrier over which most employers will not be able to climb, because the precise cause of most cancers cannot be determined. To hold otherwise, as claimant advocates, would essentially create a strict liability statute mandating that every firefighter who develops one of the prescribed cancers is entitled to workers' compensation coverage. In our view, such an outcome would vitiate the legislature's intent to provide employers with an avenue to overcome the presumption by a preponderance of the evidence. *See* § 8–41–209(2)(b); *Support, Inc.*, 968 P.2d at 175 (Panel's statutory interpretation will be set aside if inconsistent with the legislative intent).

¶ 21 The statute states that an employer may overcome the presumption by establishing "by a preponderance of the medical evidence" that the cancer "did not occur on the job." § 8–41–209(2)(b).

When applying the preponderance of the evidence standard, a fact finder must decide whether the existence of a contested fact is more probable than its nonexistence. If a party has the burden of proof by a preponder[a]nce of the evidence, and the evidence presented weighs evenly on both sides, the finder of fact must resolve the question against the party having the burden of proof.

*Schocke v. State*, 719 P.2d 361, 363 (Colo.App. 1986) (citation omitted). Thus, by specifying that the presumption can be overcome by a preponderance of the evidence, the legislature made clear that the statute was not imposing strict liability on employers, but that the presumption could instead be overcome by demonstrating that another source was more likely or more probably the cause of a firefighter's cancer. *See id.*

¶ 22 Courts in other jurisdictions that have enacted analogous provisions have similarly held that evidence showing an alternative probable cause of the illness can overcome the presumption of compensability. In those jurisdictions, the test examines probability, not definitive causation, to determine whether the presumption has been rebutted. Notably, the Supreme Court of North Dakota has held that a presumption of compensability for "any health impairment caused by lung or respiratory disease" suffered by a full-time law enforcement officer may be rebutted by proof "that, more likely, [the work] was not a significant contributing factor to the injury or disease." *Elter v. North Dakota Workers Comp. Bureau*, 599 N.W.2d 315, 319–20 (N.D.1999) (quoting *McDaniel v. North Dakota Workers Comp. Bureau*, 567 N.W.2d 833, 837 (N.D.1997)) (applying former codification of N.D. Cent.Code § 65–01–15.1) (presumption rebutted where evidence showed police officer's lung cancer was more likely caused by smoking than exposure to other work-related carcinogens such as asbestos and radon, even though deceased officer had stopped smoking fifteen years before lung cancer developed); *see also Burrows v. North Dakota Workers' Comp. Bureau*, 510 N.W.2d 617, 619 (N.D.1994) (presumption that officer's small cell lung cancer was caused by his occupation was rebutted by medical evidence opining that claimant's smoking increased his likelihood of developing lung cancer fifty-fold).

¶ 23 The Missouri Court of Appeals likewise concluded that an employer's evidence of alternative, probable causes of a firefighter's illness sufficiently rebutted the presumption of compensability. *See Byous v. Missouri Local Gov't Emps. Ret. Sys. Bd. of Trs.*, 157 S.W.3d 740, 749 (Mo.Ct.App.2005) (to overcome presumption that heart disease was suffered in the line of duty by firefighter, employer must show "that non-work-related causes more probably caused the heart disease than work-related causes").

¶ 24 We find the views of these jurisdictions compelling and persuasive. We therefore hold that an employer may overcome the statutory presumption of compensability with specific risk evidence demonstrating that a particular firefighter's cancer was probably caused by a source outside work.

¶ 25 Because the ALJ held the Town to a standard higher than required under the statute, we must remand to the Panel to remand to the ALJ to review the evidence under the standard described above. On remand, the ALJ shall review the evidence presented to determine whether the Town overcame the presumption by showing, by a preponderance of the medical evidence, that it was more likely than not that claimant's cancer "did not occur on the job." § 8–41–209(2)(b).

¶ 26 The order is set aside and the case remanded for further proceedings consistent with this opinion.

JUDGE FURMAN and JUDGE MILLER concur.