Opinion by JUDGE GRAHAM
¶ 1 Plaintiff, Creager Mercantile Company, Inc. (Creager), appeals the judgment of the district court affirming the Colorado Department of Revenue's (DOR's) final determination that Creager is liable for certain taxes on tobacco products. We reverse and remand for entry of judgment in favor of Creager.
I. Background
¶ 2 Creager is a distributor of groceries, tobacco, and other products to convenience stores. In 2003, Creager began distributing Blunt Wraps, which are rolling papers consumers can use to roll their own cigars or cigarettes. Blunt Wraps are made from homogenized tobacco leaves and contain between thirty and forty-eight percent tobacco.
¶ 3 DOR is responsible for collecting taxes on tobacco products, which are defined in section 39-28.5-101(5), C.R.S.2014. DOR audited Creager for the 2001-2003 tax periods and levied no tax assessment related to Blunt Wraps. In December 2006, DOR issued a notice (known as an "FYI") advising taxpayers that, despite any prior confusion on the issue, it now considered products that contain any amount of tobacco to be "tobacco products" within the meaning of the statute. In early 2007, DOR audited Creager for the 2004-2006 tax periods. Because Blunt Wraps contain some tobacco, DOR issued Creager a tax assessment related to them, as well as a notice of deficiency that included penalties and interest for nonpayment.
¶ 4 Creager disputed the results of the audit. After a hearing, DOR issued a final determination that Blunt Wraps are "tobacco products" within the meaning of the statute, and affirmed the tax assessment, penalties, and interest. Creager appealed to the district court, which conducted a trial de novo. The district court affirmed the tax assessment, but reversed the imposition of penalties and interest. Creager now appeals the district court's judgment, as well as its subsequent order denying post-trial relief.
II. Analysis
¶ 5 On appeal, Creager claims the district court erred in holding that (1) Blunt Wraps are "tobacco products" within the meaning of section 39-28.5-101(5) ; (2) Creager is liable for the 2004-2006 tax assessments; and (3) Creager is liable for any tax assessment related to Blunt Wraps prior to its judgment in 2013. Because we agree with Creager's first claim, we need not address the remaining two.
¶ 6 When a taxpayer appeals a final determination of the DOR, the district court tries the case de novo. Noble Energy, Inc. v. Colo. Dep't of Revenue, 232 P.3d 293, 296 (Colo.App.2010). In reviewing the district court's decision, we defer to its findings of fact unless they are clearly erroneous and not supported by the record. Id . We review its application of law, including any questions of statutory construction, de novo. Id. ; Qwest Corp. v. City of Northglenn, 2014 COA 55, ¶¶ 8-9, 351P.3d 505.
¶ 7 In our de novo review, we give deference to a statute's interpretation by the agency charged with its enforcement. Markus v. Brohl, 2014 COA 146, ¶ 44, 412 P.3d 647. Ultimately, however, the agency's view of the law is not binding on the reviewing court. Id .
¶ 8 We are required here to interpret and apply section 39-28.5-101(5). When we interpret a statute, our goal is to give effect to the intent of the General Assembly. Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088 (Colo.2011). We begin with the statutory language, giving words their plain and ordinary meanings, and taking into account their context within the statute as a whole. Id . at 1088-89. If the language is clear, we *828 apply it as written. Id . If it is ambiguous, we may resort to rules of statutory interpretation to determine the General Assembly's intent. Id . A statute is ambiguous if it is fairly susceptible of more than one interpretation. People in Interest of O.C., 2012 COA 161, ¶ 20, 312 P.3d 226.
¶ 9 In Colorado, tobacco products other than cigarettes are taxed at forty percent of the manufacturer's list price. See §§ 39-28.5102, -102.5, C.R.S. 2014. The term "tobacco products" is defined in section 39-28.5-101(5). Under that section,
"[t]obacco products" means cigars, cheroots, stogies, periques, granulated, plug cut, crimp cut, ready rubbed, and other smoking tobacco, snuff, snuff flour, cavendish, plug and twist tobacco, fine-cut and other chewing tobaccos, shorts, refuse scraps, clippings, cuttings and sweepings of tobacco, and other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or for smoking in a pipe or otherwise, or for both chewing and smoking, but does not include cigarettes which are taxed separately....
In other words, for purposes of the tobacco tax, a "tobacco product" is one of the products specifically enumerated in the statute and "other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or for smoking in a pipe or otherwise...." Id .
¶ 10 The parties agree that Blunt Wraps are a form of tobacco not specifically enumerated in the statute. Their dispute centers on whether Blunt Wraps are "prepared in such manner as to be suitable for ... smoking in a pipe or otherwise," which would render them subject to the tobacco tax nonetheless. To resolve this question, we begin by examining the statutory language.
¶ 11 As used in the statute, the word "suitable" means "adapted to a use or purpose," Webster's Third New International Dictionary 2286 (1961), or "fit and appropriate for an intended purpose," Black's Law Dictionary 1663 (10th ed. 2014). The district court determined that Blunt Wraps "are a wrapping for roll-your-own cigars/cigarettes ... designed to be filled with tobacco, rolled, sealed and then smoked." The court's conclusions, as well as its comments during the trial,[1] suggest that, while Blunt Wraps contain tobacco, they are not particularly well adapted or appropriate for smoking on their own. Thus, Blunt Wraps are not "prepared in such manner as to be suitable for ... smoking" unless they are filled with a more flammable material. In this way, they are more like a rolling paper than the tobacco that fills it.
¶ 12 While it is clear from the statutory language that tobacco-free rolling papers are not taxed as tobacco products, it is not so clear whether the legislature intended products like Blunt Wraps-rolling papers that contain some tobacco-to be subject to the tax. On the one hand, they are a form of tobacco suitable for smoking in certain circumstances (namely, when wrapped around something more suitable for smoking). On the other hand, if they are "tobacco products" for tax purposes, so are all products that contain any amount of consumable tobacco. If this was the General Assembly's intent, it could have simply said so. As it is, such an expansive reading of the statute would make the bulk of its language superfluous. Because we presume the General Assembly intended each of its words to have meaning, we conclude the statute is ambiguous.[2] See Town of Castle Rock v. Indus. Claim Appeals Office, 2013 COA 109, ¶ 9, 373 P.3d 609 ("[W]hen examining a statute's plain language, we give effect to every word and render none superfluous, because we do not presume that the legislature used language *829 idly and with no intent that meaning should be given to its language." (internal quotation marks and alterations omitted)). To resolve this ambiguity, we must look beyond the statutory language. See Ritter, 255 P.3d at 1089.
¶ 13 Various principles of statutory interpretation lead us to conclude that Blunt Wraps are not "tobacco products" within the meaning of section 39-28.5-101(5).
¶ 14 First, in interpreting tax statutes, we resolve doubts in favor of the taxpayer. Bd. of Cnty. Comm'rs v. ExxonMobil Oil Corp., 192 P.3d 582, 586 (Colo.App.2008). We do not view the power to impose taxes expansively. Id . Rather, "[t]he general rule, long followed in Colorado, is that the taxing power and taxing acts are construed strictly against the taxing authority and in favor of the taxpayer." Id . (internal quotation marks omitted). We must not extend the reach of the statute beyond its clear import. See Noble Energy, 232 P.3d at 296. Thus, we must resolve any doubt about the statute's reach in Creager's favor.
¶ 15 Second, when "a general term follows a list of things in a statute, we apply the principle of ejusdem generis." Winter v. People, 126 P.3d 192, 195 (Colo.2006). This canon of statutory interpretation provides that, when a general term follows a list of specific things, the general term applies only to things of the same general class as those specifically mentioned. Id . The reasons for this rule are twofold: (1) when the initial terms belong to an obvious and readily identifiable category, one presumes that the writer had that category in mind for the entire passage; and (2) when the general term is given its broadest application, it renders the prior enumeration superfluous. Antonin Scalia & Bryan A. Garner, Reading Law 199 (2012).
¶ 16 Here, we must interpret the phrase "other kinds and forms of tobacco, prepared in such manner as to be suitable for chewing or for smoking in a pipe or otherwise," section 39-28.5-101(5), to apply only to those things that share the characteristics of the items listed in the statute. Winter, 126 P.3d at 195. The listed products include several varieties of cigars, chewing tobacco, and forms of tobacco generally consumed by smoking in a pipe or hand-rolled cigar or cigarette. Each of the products on the list is a focus of consumption; absent are products that, like Blunt Wraps, contain some tobacco but are only suitable for consuming other products. Because Blunt Wraps do not fall within the same class as the items listed in the statute, the principle of ejusdem generis would exclude them from its scope.
¶ 17 Third, when considered in the context of other provisions relating to tobacco products, it is clear that the term is defined more narrowly in the tax code than in other realms. Section 3928.5-101 was enacted in 1986. Ch. 241, sec. 13, § 39-28.5-101, 1986 Colo. Sess. Laws 1113. The following year, the General Assembly enacted section 18-13-121, C.R.S., which banned furnishing tobacco products to minors. Ch. 133, sec. 1, § 18-13121(1), 1987 Colo. Sess. Laws 676. Originally, both statutes used the same definition of "tobacco products." See id . In 2008, however, the General Assembly amended section 18-13-121 to expand its definition of "tobacco products" to include "any product that contains or is derived from tobacco and is intended to be ingested or inhaled by or applied to the skin of an individual...." Ch. 236, sec. 1, § 18-13-121(5), 2008 Colo. Sess. Laws 887. The definition was expanded again in 2011, Ch. 60, sec. 1, § 18-13121(5), 2011 Colo. Sess. Laws 157; and in 2014, the General Assembly replaced "tobacco products" with the even broader term "cigarette, tobacco product, or nicotine product," Ch. 113, sec. 1, § 18-13-121(5)(a), 2014 Colo. Sess. Laws 407. Meanwhile, the definition of "tobacco products" contained in section 39-28.5-101(5) has remained unchanged since it was enacted. Compare Ch. 241, sec. 13, § 39-28.5-101(5), 1986 Colo. Sess. Laws 1114, with § 3928.5-101(5). While we do not infer the intent of an earlier legislature from the views of a subsequent one, State v. Nieto, 993 P.2d 493, 504 n. 6 (Colo.2000), it is clear the term "tobacco products" has a narrower meaning in the tax context than in the criminal code.
¶ 18 For these reasons, we conclude that Blunt Wraps are not "tobacco products" within the meaning of section 39-28.5-101(5). Therefore, the district court erred in affirming *830 the tax assessment related to Blunt Wraps.
III. Conclusion
¶ 19 We reverse and remand for entry of judgment in favor of Creager.
JUDGE CASEBOLT and JUDGE DUNN concur.

The district court made the following comments at trial while the parties attempted to burn a Blunt Wrap in a pipe:
It's clearly moist, and ... when you put a flame to it, and you manage to burn out the moisture, you can get the thing to burn.... So dried out where it can be crushed into little teeny pieces and presumably put into a pipe, it burns, sort of.... I'm sure that if you took these pieces and crushed them into little teeny pieces ... [a]nd just crushed them into some kind of a fine pile, put it into a pipe, you could probably get some kind of something smoked.

The fact that, while this case was pending, DOR amended the definition of "tobacco product" contained in its regulations to specifically include Blunt Wraps suggests that it may have also recognized the statute's ambiguity. See Dep't of Revenue Reg. 2017, 1 Code Colo. Regs. 201-7:39-28.5-101(5).